Case 3:16-cv-03443-N  Document 1-2  Filed 12/19/16  Page 1 of 8  PageID 8

FILED
DALLAS COUNTY
11/7/2016 7:05:33 PM
FELICIA PITRE
DISTRICT CLERK

Freeney Anita

1 SOS-E-SERVE

CAUSE NO. DC-16-14430 _____

| | | |
|---|---|---|
| **R&R SULEIMAN, LLC,** | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | B-44TH JUDICIAL DISTRICT |
| | § | |
| **MID-CONTINENT CASUALTY** | § | |
| **COMPANY** | § | |
| | § | |
| Defendant, | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** R&R Suleiman, LLC ("Plaintiff"), Plaintiff in the above-styled action, and files this its Petition complaining Mid-Continent Casualty Company ("Defendant"). For cause of action, Plaintiff would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff R&R Suleiman, LLC is a domestic for-profit corporation organized under the laws of the State of Texas. Plaintiff may be contacted through its undersigned attorney of record.

2. Defendant Mid-Continent Casualty Company aka Mid-Continent Group is a wholly owned subsidiary of a foreign for-profit corporation, Great American Insurance Company. Mid-Continent Group, and may be served via the Texas Secretary of State, Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701 with a copy via certified mail to Jim Davis, Chief Operating Officer, 1437 South Boulder Ave W # 200, Tulsa, OK 74119

### II. JURISDICTION

3. This Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds the minimum jurisdictional requirements.

4. This Court has territorial jurisdiction over Defendant because it has availed itself of the jurisdiction through its business transactions in Texas, and the acts and occurrences giving rise to this lawsuit occurred in Dallas County, Texas.

### III. BACKGROUND FACTS

5. Plaintiff is the record owner of the Chevron Express located at 8000 South Loop 12, Dallas, Texas 75217 (the "Plaintiff's Property"). There are underground storage tanks responsible for storing the fuel sold at the Property.

6. On or about November of 2011, the underground storage tanks at the Plaintiff's Property began leaking into surrounding soil. At that time, Plaintiff undertook proper remediation of the spill via HKC & Associates, Inc. in order to remove the spilled fuel.

7. Such remediation continued through the beginning of 2015. On or about January 29, 2015, Defendant Mid-Continent Casualty Company—Plaintiff's insurance carrier which was providing coverage for the spill clean-up—gave Plaintiff notice that Mid-Continent would no longer be providing coverage for the spill. Mid-Continent stated that its obligations had been fulfilled under its policy. Mid-Continent went on to say that product being recovered from monitoring wells at the Property contained lead additives that were not contained in the underground storage tank system at the Plaintiff's Property. Under the U.S. Clean Air Act (42 U.S.C. § 7401 *et seq.*), lead additives to motor fuel have been banned since January 1, 1996. Therefore, the fuel being cleaned up from underneath the Plaintiff's Property was not from Plaintiff's underground storage tanks.

8. After further investigation by Plaintiff, it was discovered that a previous underground storage tank leak had occurred at the Texaco property prior to the federal ban on lead additives to gasoline going into effect. Such spill occurred sometime before May 22, 1995, when

Plaintiff Chevron was record owner of the Texaco property and before Plaintiff's storage tanks were installed.

9. Despite the expert report indicating that Plaintiff is not responsible for the remaining fuel which is now still below the surface of the Plaintiff's Property, the Texas Commission on Environmental Quality continues to designate Plaintiff as the party responsible for clean-up of the spill. Upon information and belief, the fuel now remaining underground at the Property is fuel spilled from the underground storage tanks located at the Texaco Property prior to when Plaintiff's underground storage tanks were installed.

10. Plaintiff now sues for breach of contract, bad faith, and damages incurred and that continue to be incurred from the ongoing remediation work which it now must undertake by order of the TCEQ. Furthermore, Plaintiff now sues for Declaratory Judgment and damages and requests the Court rule on the question of which of the parties herein is liable for the continued remediation of the underground fuel spill at the Plaintiff's Property.

## IV.    CAUSES OF ACTION

### COUNT ONE: BREACH OF CONTRACT

11. Plaintiff and Defendant entered into a contract for insurance coverage in which Defendant agreed to provide coverage for (a) sums that an Insured is legally obligated to pay as a result of releases from storage tank systems; (b) clean-up costs by an insured for environmental damage that an insured is legally obligated to pay as a result of releases; and (c) repair or replacement costs for storage tank systems and property damaged as a result of such repair or replacement.

12. Plaintiff fulfilled his end of the bargain by payment of his premiums, and by timely filing a claim.

13. Defendant began to fulfill its end of the bargain when it commenced clean up operations and made payments under the policy.

14. Defendant breached the contract when it notified Plaintiff of the termination of payment.

15. Plaintiff has incurred significant damages as a result of Defendant's actions. It has been forced to sue the neighboring property's current and former owners, in an attempt to determine liability for the spill, and to force a clean up of the ongoing damage to the property.

16. There is no way to determine whether the fuel remaining to be cleaned up is outside the scope of the insurance policy, until the clean-up is complete. Defendant should have, under the policy, continued to pay for clean-up costs until the remediation was complete, and then, if necessary, subrogated the claim.

## COUNT TWO: BAD FAITH

17. Plaintiff re-alleges all of the allegations in the previous paragraphs, as though set forth fully herein.

18. It is well established under Texas law that "accompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort as well as a breach of contract." *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W. 2d 508, 510 (1947) (emphasis added). The same duty of care and faithfulness that arises under common law contracts applies equally to insurance contracts. *Burroughs v. Bunch*, 210 S.W.2d 211, 214-15 (Tex.Civ. App.—El Paso 1948, writ ref'd); *American Standard Life Ins. Co. v. Redford*, 337 S.W.2d 230, 231 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.).

19. Specifically, this court has recognized the duty of an insurer to deal fairly and in good faith with its insured in the processing and payment of claims. *Arnold v. National County*

*Mutual Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987); *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983) (Spears, J., concurring).

20. In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of the insurance contracts which would allow unscrupulous insurers to take advantage of their insured's misfortunes in bargaining for settlement or resolution of the claims....*Id*.

21. The duty of good faith and fair dealing is thus imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 212 (Tex. 1988). An insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered. . See *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex. 1988).

22. Plaintiff and Defendant entered into a contract for insurance coverage in which Defendant agreed to provide coverage for (a) sums that an Insured is legally obligated to pay as a result of releases from storage tank systems; (b) clean-up costs by an insured for environmental damage that an insured is legally obligated to pay as a result of releases; and (c) repair or replacement costs for storage tank systems and property damaged as a result of such repair or replacement.

23. Defendant breached its duty of good faith and fair dealing when it declined to cover remediation costs beginning in February 2015. Plaintiff was unable to afford to continue remediation without insurance coverage, and incurred significant damage to its property. Defendant knew or should have known that denying the claim was in bad faith.

## COUNT THREE: ATTORNEY'S FEES

24. Plaintiff re-alleges all of the allegations in the previous paragraphs, as though set forth fully herein.

25. Plaintiff is entitled to recover their costs and reasonable and necessary attorney's fees that are equitable and just, incurred in bringing this action. *See* Tex. Civ. Prac. & Rem. Code § 37.009; Tex. Health & Safety Code § 361.344(a).

## V.   DAMAGES

26  Defendant's activities, actions, and/or inactions, as detailed above, directly and/or proximately caused damages to Plaintiff and adversely affected Plaintiff's Property. Plaintiff has sustained temporary and/or permanent damages, which include the following:

   a. Actual damages;

   b. Economic damages;

   c. Special damages;

   d. Consequential and/or incidental damages;

   e. Lost market value damages for land and building;

   f. Cost of repair/remediation damages;

   g. Loss of sale damages, lost benefits of the contract damages, and or lost profits damages;

   h. Loss of use and enjoyment damages;

   i. Lost rental value damages;

   j. Unreasonable fear, apprehension, offense, discomfort, annoyance, loss of peace of mind, emotional harm/distress, inconvenience, and deprivation of enjoyment of property in the past, present, and future;

   k. Mental anguish;

   l. Exemplary damages;

   n. Abatement, Injunctive, and/or Equitable relief/damages;

o. Attorney's Fees;

p. Pre-judgment and post-judgment interest;

q. Investigation Costs;

r. Remediation Costs;

s. Court costs; and

t. Unliquidated damages within the jurisdictional limits of this court.

27. Furthermore, Plaintiff asserts that an award of reasonable and necessary attorney fees would be equitable and just and, therefore, is authorized by law. Plaintiff now sues the Defendant for Plaintiff's reasonable and necessary attorneys' fees and expenses of litigation for this action and any appeal to any appellate court.

## VI. JURY DEMAND

28. Plaintiff demands a jury trial and tender the appropriate fee with this petition.

## PRAYER AND REQUEST FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests that, upon final trial or other disposition of this lawsuit, Plaintiff has and recovers judgment against Defendants for the following:

(a) Actual damages for diminution and/or complete loss of sale value, and investigation and remediation costs;

(b) Reasonable and necessary attorney's fees;

(c) Pre-judgment and post-judgment interest as provided by law;

(d) Costs of court; and

(e) Such other and further relief, at law of in equity, to which Plaintiff is justly entitled.

Dated: November 7, 2016

                                    Respectfully submitted,

                                    */s/ Joyce Lindauer*
                                    Joyce W. Lindauer
                                    State Bar No. 21555700
                                    Joyce W. Lindauer Attorney, PLLC
                                    12720 Hillcrest Road, Suite 625
                                    Dallas, Texas 75230
                                    Telephone: (972) 503-4033
                                    Facsimile: (972) 503-4034
                                    joyce@joycelindauer.com